USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/7/25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                            :
IN RE:                                      :
W. WESLEY DRUMMON,         :
                                         :
                     Debtor.   :
                                         :
------------------------------------------------------------------X
                                            :
THE CITY OF ATLANTIC CITY,     :
                     Appellant, :
                                       :
          -against-                :
                                       :
W. WESLEY DRUMMON,         :
                                       :
                     Appellee.  :
------------------------------------------------------------------ X

OPINION &
ORDER

24-CV-1668
(VEC)

VALERIE CAPRONI, United States District Judge:

Atlantic City (the "City") appeals two orders of the Bankruptcy Court for the Southern District of New York (James L. Garrity, Jr., B.J.) (the "Bankruptcy Court") dismissing the City's adversary proceeding against W. Wesley Drummon ("Drummon"). For the reasons discussed below, the orders of the Bankruptcy Court are AFFIRMED.

## BACKGROUND[1]

Drummon is a debtor who filed for protection under chapter 7 of the Bankruptcy Code. *See* Petition, *In re W. Wesley Drummon*, No. 19-10670, Dkt. 1 (Bankr. S.D.N.Y. 2019). The City alleges that Drummon defrauded it, and seeks to exclude the $3 million it alleges Drummon

---

[1] The facts and procedural history are gathered from the parties' appellate briefs and the Bankruptcy Court's decisions. All facts are undisputed unless otherwise noted. The Court will refer to the relevant submissions as follows: Appellant's memorandum of law in support of its appeal, Dkt. 35, as "Appellant Br."; Appellee's memorandum of law in opposition to Appellant's appeal, Dkt. 36, as "Appellee Br."; and Appellant's reply in further support of its appeal, Dkt. 37, as "Appellant Reply."

owes it from discharge.  Appellant Br. at 18, Dkt. 35.  The facts giving rise to this dispute stem
from contracts between the City and an entity associated with Drummon.

**A.  Factual Background**

In 2013, the City and Zemurray Street Capital LLC[2] ("Zemurray") entered into two
agreements to create a lending program pursuant to which Zemurray would make Government-
backed loans available for the City's residents.  *In re W. Wesley Drummon*, No. 19-10670,
(Bankr. S.D.N.Y. Nov. 30, 2023) ("Bankr. Op. 1") at 2, Dkt. 110.  As noted by the Bankruptcy
Court, the agreements are not models of draftsmanship.  *Id.* at 43.

In August 2013, the City and Zemurray entered into a Memorandum of Understanding
(the "MOU") and an Escrow Agreement ("Escrow Agreement").  *Id.* at 2.  Per the MOU,
Zemurray would establish a Loan Fund (the "Loan Fund") financed with $3 million from the
City as part of a program to make Government-backed loans available to City residents.  *Id.* at 8–
9.  The MOU provided that Zemurray would "use" another company, Tennessee Business and
Industrial Development Company ("TN BIDCO"), to make loans as part of the program.  *Id.* at
8.  The Escrow Agreement created an escrow account ("Escrow Account") as to which
Drummon, the sole authorized signatory of Zemurray, had authority to direct the disbursement of
funds.  *Id.* at 9.  After entering into the MOU and the Escrow Agreement, on August 8, 2013, the
City deposited $3 million into the Escrow Account.  *Id.*

Perhaps in anticipation of reaching the above-referenced agreements with the City, in
January 2013, Zemurray had submitted a change-of-control application to the Tennessee
Department of Financial Institutions (the "Department") for regulatory approval of its purchase
of TN BIDCO, the company Zemurray had represented to the City that it would use for the

---

[2]    At all times relevant to this appeal, Drummon was the managing partner of Zemurray.  *In re W. Wesley*
*Drummon*, No. 19-10670, (Bankr. S.D.N.Y. Nov. 30, 2023) at 2 ("Bankr. Op. 1"), Dkt. 117.

lending program.  *Id*. at 9.  On August 2, 2013, Zemurray informed the Department that its

capital contribution to TN BIDCO would be $3 million that would come from equity capital

from its members; the Department approved the purchase.  *Id*. at 10–11.  Thereafter, on August

23, 2013, Drummon wired $3 million from the Escrow Account to TN BIDCO's bank account;

the funds were promptly disbursed from that account.  *Id*. at 11.

The MOU required Zemurray to provide quarterly reports to the City regarding the Loan

Fund.  *Id*. at 12.  Zemurray issued a single report on March 24, 2014, but it never substantiated

the report despite requests from the City, and the report contained no information about the

money in the Loan Fund.  *Id*. at 12–13.

In late 2013, the City requested a bank statement for the Escrow Account and was

informed that the $3 million it had provided was no longer in the Escrow Account.  *Id*. at 13.  In

May 2014, the City cancelled the MOU after numerous failed attempts to get in contact with

Drummon regarding the $3 million.  *Id*. at 13–14.  TN BIDCO never provided any loans to the

City's residents.  *Id*. at 13.

### B.  Procedural Background

In July 2014, the City sued Drummon in New Jersey state court, alleging breach of

contract, breach of the implied covenant of good faith and fair dealing, fraud, conversion,

fraudulent transfer, and fraudulent concealment.  *Id.* at 14.  Drummon removed the suit to district

court in August 2014.  *Id*.  The City deposed Drummon and although he answered questions

about Zemurray's acquisition of TN BIDCO, he invoked his Fifth Amendment rights and refused

to answer other questions during the deposition.  *Id*. at 14–15.  Additionally, Drummon invoked

his Fifth Amendment right in his responses to Requests for Admissions served by the City.  *Id*. at

55.  The City moved for an adverse inference (the "Adverse Inference Motion") based on his

silence and moved for summary judgment on its other claims.  *Id*. at 15.  The district court

granted summary judgment on the City's breach of contract claim as to Zemurray but denied the

motion as to all other claims and denied the Adverse Inference Motion.  *Id*.

On March 1, 2019, Drummon filed for chapter 7 bankruptcy protection, staying the

district court action.  *See* Petition, *In re W. Wesley Drummon*, No. 19-10670, Dkt. 1 (Bankr.

S.D.N.Y. 2019).  On June 3, 2019, the City filed an adversary proceeding against Drummon,

alleging five counts.  Bankr. Op. 1 at 19–20.  Counts One, Two, and Three sought, pursuant to

11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6), to exclude from discharge Drummon's alleged debts

to the City.  *Id*. at 20.  Counts Four and Five sought, pursuant to 11 U.S.C. § 727(a)(4)(A) and

(B), judgments denying Drummond a discharge in bankruptcy.  *Id*.

As part of his bankruptcy petition, Drummon filed Schedule A/B and Schedule C forms

(the "Schedules").  *In re W. Wesley Drummon*, No. 19-10670, (Bankr. S.D.N.Y. Feb. 14, 2024)

("Bankr. Op. 2") at 5, Dkt. 117.  Those Schedules require debtors to describe their financial

assets and identify "[n]on-publicly traded stock and interests in incorporated and unincorporated

businesses, including an interest in an LLC, partnership, and joint venture."  *Id.*  Drummon listed

Zemurray as one of his assets, describing the company as a "[f]inancial entity co-owned [sic]

with 9 other partners"; Drummon valued his interest in Zemurray at "$0.00."  *Id.*  Drummon did

not, however, have a direct ownership interest in Zemurray; instead, he had a 50 percent interest

in Taipan Holdings LLC ("Taipan") that, in turn, held a 50 percent interest in Zemurray.  *Id*.

Drummon did not disclose his interest in Taipan in the Schedules as originally filed.  *Id*.  After

the City filed its Adversary Proceeding, in which it alleged that Drummon's failure to disclose

his ownership interest in Taipan was fraudulent, Drummon filed amended Schedules; in the

amended Schedules, Drummon removed all references to Zemurray, added disclosure of his interest in Taipan, and valued his interest in Taipan at $0.00. *Id.* at 6.

The parties cross-moved for summary judgment as to Counts One, Two, and Three. Appellant Br. at 19. Additionally, the City moved for an adverse inference against Drummon. *Id.* On November 30, 2023, the Bankruptcy Court granted Drummon's motion and denied the City's cross-motion and Adverse Inference Motion. Bankr. Op. 1 at 4. Drummon then successfully moved for judgment on the pleadings as to Counts Four and Five. Bankr. Op. 2 at 3.

The City is now appealing the Bankruptcy Court's decision ("Bankr. Op. 1") granting Drummon summary judgment as to Counts One and Three[3] and denying the City's Adverse Inference Motion, and the Bankruptcy Court's decision ("Bankr. Op. 2") granting Drummon judgment on the pleadings as to Counts Four and Five.

## DISCUSSION

### I.    Legal Standard

District courts have appellate jurisdiction over bankruptcy court rulings pursuant to 28 U.S.C. § 158(a)(1). *In re Ditech Holding Corp.*, No. 23-CV-7194, 2024 WL 1342811, at *2 (S.D.N.Y. Mar. 29, 2024). "A district court reviews a bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*." *Thakur v. SJBP Inc.* (*In re Thakur*), 498 B.R. 410, 418 (S.D.N.Y. 2013) (citing *Overbaugh v. Household Bank, N.A. (In re Overbaugh)*, 559 F.3d 125, 129 (2d Cir. 2009)). "A finding of fact is clearly erroneous if, after reviewing the

---

[3]     A heading in the City's brief asserts that the Bankruptcy Court erred "with Respect to Counts One through Three" of its Complaint, but the City's brief does not refer to Count Two beyond the heading. Appellant Br. at 25. Drummon's brief also does not address Count Two. Appellee Br. at 31. Accordingly, the Court only addresses Counts One and Three in its review of Bankr. Op. 1. *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 107 (2d Cir. 2012) (citations omitted) (holding that "[m]erely mentioning" or "[s]imply stating" an argument in an appellate brief "is insufficient to preserve it" for review).

evidence as a whole, 'the reviewing court is left with the definite and firm conviction that a mistake has been committed.'" *Id*. at 418–19 (quoting *Wilmington Tr. Co. v. AMR Corp.* (*In re AMR Corp.*), 490 B.R. 470, 475 (S.D.N.Y. 2013)).  District courts should not overturn bankruptcy court decisions "if an error is harmless, meaning the error 'is not inconsistent with substantial justice or does not affect the substantial rights of the parties.'"  *Morse v. Rescap Borrower Claims Tr.*, No. 14-CV-5800, 2015 WL 353931, at *3 (S.D.N.Y. Jan. 26, 2015) (quoting *Cavalry Constr. v. WDF, Inc.* (*In re Cavalry Constr., Inc.*), 428 B.R. 25, 42 (S.D.N.Y. 2010), *aff'd*, 425 F. App'x 70 (2d Cir. 2011)).  A district court "may affirm [the bankruptcy court's decision] on any ground that finds support in the record, and need not limit its review to the bases raised or relied upon in the decision below." *Freeman v. J. Reg. Co*., 452 B.R. 367, 369 (S.D.N.Y. 2010).

## II. The Bankruptcy Court Did Not Err in Granting Drummon Summary Judgment on Counts One and Three of the City's Complaint

### A. Count One

The City argues that the Bankruptcy Court erred when it granted Drummon summary judgment on Count One because it ignored disputed facts that establish that Drummon defrauded the City.  Appellant Br. at 30.  The City argues that (i) Drummon made a series of misrepresentations to City representatives; (ii) the transfers Zemurray made to acquire TN BIDCO were not authorized by the MOU; and (iii) the City's $3 million "was never used as Drummon represented it would be." *Id*. at 27–28.  The City argues that the transfer of funds Zemurray made to acquire TN BIDCO constitutes "actual fraud" so that, pursuant to 11 U.S.C. § 523(a)(2)(A), the resulting debt is not dischargeable. *Id*. at 28.  Citing *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355 (2016), the City argues that the Supreme Court expanded 11 U.S.C. § 523(a)(2)(A) to include forms of fraud "that can be effected without a false representation" and

6

that "actual fraud" is "any fraud that involves moral turpitude and intentional wrong." *Id*. at 26. (citing *Husky,* 578 U.S. at 359–60). The City maintains that Zemurray's acquisition of TN BIDCO and TN BIDCO's subsequent failure to originate any loans were parts of an "elaborate scheme" that was analogous to "what was found to constitute actual fraud" in *Husky*. *Id*. at 28. Drummon responds that the transfers that resulted in Zemurray's acquisition of TN BIDCO were "pursuant to the specific language of the escrow agreement between the parties." Appellee Br. at 32.

Section 523(a)(2)(A) makes certain debts not dischargeable. That said, exceptions to dischargeability "are to be narrowly construed and genuine doubts should be resolved in favor of the debtor." *Denton v. Hyman* (*In re Hyman*), 502 F.3d 61, 66 (2d Cir. 2007). "[F]alse pretenses," "false representations," and "actual fraud, other than a statement respecting the debtor's or an insider's financial condition," are all bases for nondischargeability. 11 U.S.C. § 523(a)(2)(A). The City relies on actual fraud as the basis for its claim. Appellant Br. at 26–28. To show actual fraud, a plaintiff must establish the five elements of common law fraud: (i) the debtor made a false representation; (ii) the debtor knew the representation was false at the time it was made; (iii) the representation was made with the intent to deceive the creditor; (iv) the creditor justifiably relied on the representation; and (v) the creditor was injured by the representation and suffered damages as a result. *Charell v. Gonzalez (In re Gonzalez)*, 241 B.R. 67, 71–72 (S.D.N.Y. 1999); *Hochstadt v. Lew* (*In re Lew*), 2011 WL 5836481, at *3 (Bankr. S.D.N.Y. Nov. 21, 2011). The fourth element, justifiable reliance, is considered an "intermediate level of reliance; less than reasonable but more than mere reliance in fact." *Citik Ka Wah Bank Ltd. v. Wong* (*In re Wong*), 291 B.R. 266, 275 (Bankr. S.D.N.Y. 2003).

In *Husky*, the Supreme Court held that the term "actual fraud" in 523(a)(2)(A) "is broad enough to incorporate a fraudulent conveyance." *Husky*, 578 U.S. at 361. The Court clarified that fraudulent conveyances are "not an inducement-based fraud," and that, in the fraudulent conveyance context, "the fraudulent conduct is not in dishonestly inducing a creditor to extend a debt. It is in the acts of concealment and hindrance." *Id*. at 361–62. More specifically, the Court noted that fraudulent conveyances ought to be read into the term "actual fraud," because "[f]raudulent conveyances typically involve a transfer to a close relative, a secret transfer, a transfer of title without transfer of possession, or grossly inadequate consideration." *Id*. at 361 (internal quotation marks and citations omitted).

The City's argument stretches the *Husky* expansion of the term "actual fraud" in section 523(a) beyond its logical limits. The *Husky* Court clearly held that its expansion of actual fraud was meant to include the specific conduct at issue in *Husky*, which was "a transfer scheme designed to hinder the collection of debt." *Id*. at 360. The City's assertion that although "*Husky* was a fraudulent transfer case, the Supreme Court's holding was not limited to such cases" is incorrect. Appellant Br. at 26. Moreover, as the Bankruptcy Court noted, even if *Husky* is read broadly, there is no evidence in this case that establishes fraud. Bankr. Op. 1 at 42. Zemurray's transfer of funds to TN BIDCO to purchase it were authorized by the terms of the poorly drafted MOU and Escrow Agreement. *Id*. at 43. Although the poor drafting of those agreements led to unfortunate results for the City, that does not convert Drummon's conduct into fraud. This Court concurs with the Bankruptcy Court that the City "entered into a poorly planned arrangement with an imprecisely worded contract followed by a bungling execution in which Zemurray spent all of the funds to purchase TN BIDCO." *Id*. Although all of that is unfortunate for the City, it does not constitute fraud.

**B. Count Three**

The City argues that the Bankruptcy Court erred when it granted Drummon summary judgment on Count Three, which seeks to deny discharge of Drummon's debt to the City pursuant to 11 U.S.C. § 523(a)(6).  Appellant Br. at 30.  Section 523(a)(6) provides that a Chapter 7 discharge does not discharge a debtor from debts "for willful and malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6).  To state a claim for relief under section 523(a)(6), "a plaintiff must allege facts demonstrating 'first, that the debtor acted willfully, second, that the debtor acted maliciously, and third, that the debtor's willful and malicious actions caused injury to the creditor or its property.'"  *Xin v. Zhu (In re Heng Li Zhu)*, 2022 WL 3364579, at *21 (quoting *In re Salim*, 2015 WL 1240000, at *22 (Bankr. E.D.N.Y. Mar. 16, 2015)).  "The terms 'willful' and 'malicious' are separate elements, and both elements must be satisfied."  *Rupert v. Krautheimer* (*In re Krautheimer*), 241 B.R. 330, 340 (Bankr. S.D.N.Y. 1999) (citation omitted).  "[T]he word 'willful' indicates 'a deliberate or intentional *injury*, not merely a deliberate or intentional act that leads to injury.'"  *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)).  Malicious means "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will."  *Navistar Fin. Corp. v. Stelluti* (*In re Stelluti*), 94 F.3d 84, 87 (2d Cir. 1996).

The City argues that the Bankruptcy Court erred in refusing to consider the City's section 523(a)(2)(A) argument that Drummon engaged in a fraudulent scheme to establish the elements of its 523(a)(6) claim.  Appellant Br. at 30.  Again, the City relies on *Husky*, arguing that it supports the proposition that "debtors who commit fraudulent conveyances *and* the debtors who

make false representations under § 523(a)(2)(A) could likewise also inflict willful and malicious injury under § 523(a)(6)." *Id.* (quoting *Husky*, 578 U.S. at 363).

*Husky* stands only for the proposition that conduct that sustains a section 523(a)(2)(A) claim *could* overlap with conduct that sustains a section 523(a)(6) claim. The Supreme Court noted that "[t]here is . . . overlap [between the two sections], but that overlap appears inevitable." *Husky*, 578 U.S. at 363. Because the City assumed that this "unremarkable point" was adequate to establish its section 523(a)(6) claim, it did not adduce any other arguments or facts that would meet section 523(a)(6)'s standard. *Id.*

The Bankruptcy Court's conclusion that the City did not meet its burden regarding Count Three is correct. The record reflects that Drummon and Zemurray negotiated the terms of the agreements with the financial interests of Zemurray in mind; the record contains no evidence that Drummon engaged in willfully malicious conduct vis-à-vis the City. Bankr. Op. 1 at 47.

## III.   The Bankruptcy Court Did Not Err in Granting Drummon Summary Judgment on Counts Four and Five

### A. Count Four

The City asserts that the Bankruptcy Court erred when it held that the City failed to state a claim for relief in Count Four of its Complaint. The City alleges that Drummon "knowingly, fraudulently, and intentionally made a false oath or account by failing to disclose his property interests in Taipan." Appellant Br. at 31.

To state a claim for relief under section 727(a)(4)(A), the City must allege: (i) Drummon made a statement under oath; (ii) Drummon's statement was false; (iii) Drummon knew the statement was false; (iv) Drummon made the statement with fraudulent intent; and (v) the statement related materially to the bankruptcy case. *Piazza v. Bruno* (*In re Bruno*), 2023 WL 3139919, at *7 (Bankr. S.D.N.Y. Apr. 27, 2023) (citation omitted); *see Beer Sheva Realty Corp.*

*v. Pongvitayapanu* (*In re Pongvitayapanu*), 487 B.R. 130, 139 (Bankr. E.D.N.Y. 2013) ("To establish a claim under section 727(a)(4)(A), a plaintiff must prove a material false oath, knowingly and fraudulently made, in connection with a bankruptcy case.").

As to section 727(a)(4)(A)'s first element, representations made in bankruptcy petitions count as statements made under oath for the purposes of section 727(a)(4)(A). *See, e.g.*, *Nof v. Gannon* (*In re Gannon*), 173 B.R. 313, 320 (Bankr. S.D.N.Y. 1994); *Forrest v. Bressler* (*In re Bressler*), 387 B.R. 446, 460 (Bankr. S.D.N.Y. 2008). Under section 727(a)(4)(A)'s second element, "[o]missions as well as affirmative misstatements qualify as false statements for Section 727(a)(4)(A) purposes." *Adler v. Ng* (*In re Adler*), 395 B.R. 827, 841 (E.D.N.Y. 2008). The third element "mandates only that the defendant's act be voluntary and intentional—it does not require that a defendant know that the conduct violates the law." *Castillo v. Casado* (*In re Casado*), 187 B.R. 446, 450 (Bankr. E.D.N.Y. 1995).

To prove the fourth element of a section 727(a)(4)(A) claim, that the statement in question was made with fraudulent intent, the objecting party "must show that the information was omitted for the specific purpose of perpetrating a fraud and not simply because the debtor was careless or failed to fully understand his attorney's instructions. . . ." *Brisman v. Ahmed (In re Parasam)*, 647 B.R. 1, 21 (E.D.N.Y. 2022). Reckless indifference to the truth can also satisfy the fourth element's intent requirement. *Painewebber Inc. v. Gollomp (In re Gollomp)*, 198 B.R. 433, 438 (S.D.N.Y. 1996). *See Dubrowski v. Perlbinder (In re Dubrowsky),* 244 B.R. 560, 572 (E.D.N.Y. 2000) (citations omitted) ("[I]t is important to note that under section 727(a)(4)(A), a reckless indifference to the truth is sufficient to sustain an action for fraud."); *In re Casado,* 187 B.R. at 450 (citations omitted) ("Successful administration of the Bankruptcy Act hangs heavily

11

on the veracity of statements made by the Bankrupt [debtor]. . . . [R]eckless indifference to the truth . . . is the equivalent of fraud.").

The fourth element also requires the objecting party to comply with the particularity requirements of Federal Rule of Civil Procedure 9(b). *See Migoscha, S.A. v. Meffert* (*In re Meffert*), 232 B.R. 71, 74 (Bankr. S.D.N.Y. 1998). Rule 9(b) requires that when a party is "alleging fraud or mistake, [the] party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Rule 9(b) requires that a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). "In other words, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." *U.S. ex rel. Kester v. Novartis Pharms. Corp.*, 23 F. Supp. 3d 242, 252 (S.D.N.Y. 2014) (citing *U.S. ex rel. Polansky v. Pfizer, Inc.*, No. 04-CV-704, 2009 WL 1456582, at *4 (E.D.N.Y. May 22, 2009)).

The fifth element of a section 727(a)(4)(A) claim, that the statement in question is material, "depends on whether the information is pertinent 'to the debtor's business transactions, or if it concerns the discovery of assets, business dealings, or the existence or disposition of the debtor's property.'" *Gordon v. Tese-Milner (In re Gordon)*, 535 B.R. 531, 538 (S.D.N.Y. 2015) (quoting *Pereira v. Gardner (In re Gardner)*, 384 B.R. 654, 667 (Bankr. S.D.N.Y. 2008)). "[M]ateriality does not require a showing that the creditors were prejudiced by the false statement." *In re Robinson*, 506 F.2d 1184, 1188 (2d Cir. 1974).

The Bankruptcy Court correctly held that the City adequately alleged all of the elements of its section 727(a)(4)(A) claim except for the fourth element. Bankr. Op. 2 at 14–15. The City

alleged that Drummon did not report in his original Schedules that he held his stake in Zemurray via his stake in Taipan; that adequately alleged that Drummon knowingly made a false statement under oath that materially related to his bankruptcy case. *Id.* at 14. Drummon's decision to amend his Schedules confirms that his initial failure to list Taipan meets elements one, two, three and five of a section 727(a)(4)(A) claim. *Id.* at 6.

The City argues that it has also satisfied Rule 9(b)'s particularity requirement as to the fourth element because its Complaint outlines "the who, what, when, where and how of the alleged fraud" by pointing to Drummon's failure to disclose his interest in Taipan in his original Schedules. Appellant Br. at 34 (quoting *Labbadia v. Martin* (*In re Martin*), 2019 WL 3543778, at *5 (Bankr. D. Conn. Aug 2, 2019)). But, as the Bankruptcy Court noted, the City's assertion that Drummon's initial omission of Taipan is fraudulent "is a legal conclusion, not a factual allegation" and therefore does not satisfy Rule 9(b). Bankr. Op. 2 at 15. Pointing to the omission in Drummon's petition adequately alleges a false statement, but the City does not include any facts from which the Court could plausibly infer that Drummon failed to include Taipan in his initial filing for fraudulent purposes. To satisfy section 727(a)(4)(A)'s intent requirement, "the party objecting to discharge must show that the information was omitted for the specific purpose of perpetrating a fraud." *Zitwer v. Kelly (In re Kelly)*, 135 B.R. 459, 461 (Bankr. S.D.N.Y. 1992).

The City provides neither direct nor circumstantial evidence that Drummon possessed an intent to defraud when he submitted his initial Schedules. "A plaintiff can establish strong inferences of fraudulent intent either '(a) by alleging facts to show that defendant[] had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Allred v. Schimek*, 753 F.

Supp. 3d 334, 345 (S.D.N.Y. 2024) (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d Cir. 2006)).  The City's assertion that Drummon's omission is fraudulent because it is an omission is circular; the City does not offer a factual basis for inferring that Drummon omitted Taipan from his Schedules in order to defraud the City.  Further, the City's argument that Drummon's "knowledge and testimony regarding his ownership interest in Taipan" satisfies Rule 9(b)'s requirement is also insufficient, because Drummon's knowledge of his interest in Taipan is not evidence that he had an intent to defraud when he failed to include Taipan on his Schedules.  Appellant Br. at 35.

The Bankruptcy Court properly held that the City did not adequately allege the fourth element of section 727(a)(4)(A) and, therefore, that Court Four failed to state a claim for relief.

### B.  Count Five

Count Five alleges that Drummon should not be discharged in bankruptcy because his failure to list Taipan in his Schedules constitutes a false claim precluding discharge pursuant to 11 U.S.C. § 727(a)(4)(B).  Appellant Br. at 35.  Section 727(a)(4)(B) of the Bankruptcy Code permits the bankruptcy court to deny a bankruptcy discharge when "the debtor knowingly and fraudulently, in or in connection with the case—presented or used a false claim."  A "claim" for the purposes of section 727(a)(4)(B) is related to the "scheduling of non-existent debts, the scheduling of inflated debts, or the filing by the debtor of a false proof of claim."  *Scheidelman v. Henderson (In re Henderson)*, 423 B.R 598, 619 (Bankr. N.D.N.Y. 2010).  *See also Perniciaro v. Natale (In re Natale)*, 136 B.R. 344, 349 (Bankr. E.D.N.Y. 1992) ("[W]hether it be a false statement under oath or use of a false claim, the willful intent to defraud is a crucial element of the cause of action. The existence of omissions, misstatements or inaccuracies in bankruptcy petitions or schedules do not necessarily establish fraudulent intent.").  Section 727(a)(4)(B) is

14

"sparsely used." *Dranichak v. Rosetti*, 493 B.R. 370, 378 (N.D.N.Y. 2013). "The few courts that have considered objections to discharge for presenting a false claim have required plaintiffs to prove that the debtor represented or used an inflated or fictitious claim." *Id.* "To deny a debtor's discharge under section 727(a)(4)(B), the debtor must have presented or used an inflated or fictitious claim in a bankruptcy case, with intent to defraud." *In re Gollomp*, 198 B.R. at 439.

The City's sole argument is that Drummon's failure to list Taipan in his original Schedules is a "false claim" under section 727(a)(4)(B) because "a trustee could have asserted, and creditors, like the City, would have benefitted from, claims like preference actions or fraudulent transfers." Appellant Br. at 35. This argument relies on an elastic understanding of the word "claim," and the Bankruptcy Court aptly noted that "the City uses the term 'claim' only in the colloquial sense, as a factual representation" and not as it is meant to be understood under section 727(a)(4)(B). Bankr. Op. 2 at 17. The City does not allege that Drummon inflated the amount of his debts or claimed debts that do not exist, but instead relies solely on the fact that his interest in Taipan was initially not disclosed. Appellant Br. at 35. Even accepting the City's contention that "Congress intended that the meaning of 'claim' be broadly construed," the City's argument is unpersuasive. *Id.* (citing *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991)).

The Bankruptcy Court correctly held that the City failed to state a claim for relief against Drummon as to Count Five.

## IV. The Bankruptcy Court Did Not Err in Failing to Draw an Adverse Inference Against Drummon

The City argues that Drummon's invocation of his Fifth Amendment right in the underlying district court suit and in response to the City's attempt to depose him in the adversary proceeding warrants an adverse inference against Drummon. Appellant Br. at 22–24. The City claims the Bankruptcy Court erred when it denied the motion on the grounds that the City (i)

15

"sought unspecified relief in connection with the Adverse Inference Motion" and (ii) failed "to establish independent corroborative evidence in order to establish an adverse inference." *Id.* at 22, 24.

### A.  Legal Standard

The Fifth Amendment protects persons from being "compelled in any criminal case to be a witness against himself . . . ."  U.S. Const. amend. V.  Declining to answer questions during civil litigation based on one's Fifth Amendment rights, however, can lead to an adverse inference being drawn against the party invoking the privilege.  *Brink's Inc. v. City of New York*, 717 F.2d 700, 710 (2d Cir. 1983) (holding that the trier of fact in a civil action can draw reasonable inferences from refusal to answer questions upon asserting the Fifth Amendment); *LiButti v. United States*, 107 F.3d 110, 121 (2d Cir. 1997) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)) (holding that Supreme Court precedent is clear  "that while the Fifth Amendment precludes drawing adverse inferences against defendants in criminal cases, it 'does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them.'").

A request for an adverse inference requires the party to specify the facts as to which the party wants the trier of fact to draw an adverse inference.  *In re Bernard L. Madoff Inv. Sec. LLC*, 560 B.R. 208, 226 (Bankr. S.D.N.Y. 2016).  "The way the adverse inference works is that if a witness refuses to answer a question by invoking the Fifth Amendment, the Court can draw an inference that the answer *to that question* would be adverse to the claimant."  *Id.* at 227. (citation omitted).  "Of course, the general reasonableness of a fear of potential self-incrimination does not justify a refusal to answer any and all questions; the appropriateness of assertions of privilege must be determined on a question-by-question basis."  *Sterling Nat'l Bank*

*v. A-1 Hotels Int'l, Inc.*, No. 00-CV- 7352, 2004 WL 1418201, at \*2 (S.D.N.Y. June 23, 2004). *See Est. of Fisher v. Comm'r of Internal Revenue*, 905 F.2d 645, 649 (2d Cir. 1990).

Additionally, the Second Circuit has held that "the strength and cogency of the adverse inference should, of course, be tested against the other evidence in the case." *Bank of Am., N.A. v. Fischer*, 927 F. Supp. 2d 15, 26 (E.D.N.Y. 2013) (citation omitted). This is particularly true in the context of summary judgment where it is "well-established that an adverse inference drawn from a defendant's invocation of the Fifth Amendment may not be the sole basis for a finding of liability. Independent, corroborative evidence of wrong-doing must be shown." *United States v. Nagelberg*, 772 F. Supp. 120, 123 (E.D.N.Y. 1991) (citation omitted). *See Jacobs v. Jacobwitz (In re Jacobs)*, 394 B.R. 646, 663 (Bankr. E.D.N.Y. 2008) ("[T]he adverse inference drawn from a party invoking the Fifth Amendment may not be the sole basis for a finding of liability."). This means that "the evidence produced by a nonmoving party's silence is not sufficiently weighty to carry a moving party's burden in a motion for summary judgment." *Fidelity Funding of Cal., Inc. v. Reinhold*, 79 F. Supp. 2d 110, 116 (E.D.N.Y. 1997).

In short, the law is clear that the party seeking an adverse inference from the invocation of a party's Fifth Amendment rights must specify the unanswered question as to which it wants an adverse inference to be drawn and an adverse inference will not, by itself, carry a moving party's burden on summary judgment.

### B. The City's Motion Was Correctly Denied

The City did not specify in its motion which questions that Drummon declined to answer during his deposition should result in an adverse inference being drawn. Instead, the City pointed to his entire deposition as containing the facts as to which it asked the court to draw an adverse inference. Appellant Br. at 23. Although the transcript contains specific instances

where Drummon invoked his Fifth Amendment right, the City's gesture toward the entire

transcript lacked the specificity required to gain relief via an adverse inference.  *Sterling Nat'l*

*Bank*, 2004 WL 1418201 at *2 (with regard to deposition transcripts being submitted to support a

motion for an adverse inference, "it is not the Court's job to parse the transcript, guessing at the

basis of assertions of privilege as to each question").  The Bankruptcy Court correctly noted that

a court "cannot draw an amorphous adverse inference about the general circumstances of the

case.  Simply put, an adverse-inference motion must identify what the movant wishes the court

to infer."  Bankr. Op. 1 at 55.

      The City contends that pointing to Drummon's alleged conduct generally satisfies the

factual identification necessary for an adverse inference.  Appellant Br. at 23.  This Court

disagrees.  Highlighting Drummon's alleged conduct generally does not specify anything; it

merely articulates the City's overall grievance.  The City's complaint that the Bankruptcy Court

precluded it from establishing the bases for adverse inferences because the court instructed

Drummon to inform the City as to whether he would be invoking the Fifth Amendment is also

unpersuasive.  *Id*. at 23–24.  The Bankruptcy Court instructed Drummon to confirm whether he

would invoke the Fifth Amendment during depositions related to the Bankruptcy proceeding, but

that confirmation is not preclusive nor did it relieve the City of its burden of asking the questions

it wanted answered.  In short, the City's failure to specify the facts as to which it wanted the

Court to draw an adverse inference was an appropriate basis for the Bankruptcy Court to deny its

Adverse Inference Motion.

      Furthermore, the City did not provide any independent evidence to corroborate the

adverse inference it wanted the bankruptcy court to draw.  Although "[s]ilence is often evidence

of the most persuasive character," that does not make silence a replacement for independent,

corroborative evidence in the context of an adverse inference. *United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 153–54 (1923). The City relies on *Mirlis v. Greer*, 952 F.3d 36 (2d Cir. 2020), for the proposition that establishing an adverse inference does not require independent evidence. Appellant Br. at 24. In *Mirlis v. Greer*, the Second Circuit upheld the district court's admission into evidence that the defendant refused to answer certain questions based on his privilege against self-incrimination and its charge to the jury that it could, but did not have to, infer from the defendant's invocation that his answer would have been adverse to his interests. 952 F.3d at 44–45. In considering whether the admission of his invocation withheld scrutiny under Rule 403, Fed. R. Evid., the Court noted that there was ample other evidence of the defendant's misconduct, making it clear that "the jury did not base its decision 'solely' on [the defendant's] refusal to testify." *Id.* at 47. *Mirlis* cannot be read to support the City's argument that it somehow extinguished the independent corroborative evidence requirement for adverse inferences. *See also Baxter*, 425 U.S. at 318; *Fidelity Funding of Cal., Inc.*, 79 F. Supp. 2d at 116; *In re Jacobs*, 394 B.R. at 663.

The City's failure to produce independent evidence of Drummon's wrongdoing in connection with its request for an adverse inference is an additional reason to affirm the Bankruptcy Court's denial of the City's Adverse Inference Motion.

## CONCLUSION

For the reasons discussed above, the Bankruptcy Court's orders are AFFIRMED, and the City's appeal is DENIED. The Clerk of Court is respectfully directed to close the case.

Date:  May 7, 2025
      New York, New York

**VALERIE CAPRONI**
**United States District Judge**